```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                         KEY WEST DIVISION
                    CASE NO.  15-10013-CR-JEM




UNITED STATES OF AMERICA,

             Plaintiff,

     vs.
                                         Key West, Florida
                                         April 12, 2016
DREW ALEXANDER YOUNG,                    Pages 1-17

             Defendant.
_____

             TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE JOSE E. MARTINEZ
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:
                    United States Attorney's Office
                    BY:  CHRISTOPHER BROWNE, A.U.S.A.
                    99 N.E. 4th Street
                    Miami, Florida 33132


FOR THE DEFENDANT:
                    Federal Public Defender's Office
                    BY:  STEWART ABRAMS, A.F.P.D.
                    150 West Flagler Street
                    Miami, Florida 33130



REPORTED BY:        DAWN M. SAVINO, RPR
                    Official Court Stenographer
                    400 N. Miami Avenue, 10S03
                    Miami, Florida  33128
                    Telephone:  305-523-5598
```

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

```
 1                        P-R-O-C-E-E-D-I-N-G-S
 2              COURTROOM DEPUTY:  Case Number
 3   15-10013-criminal-Martinez, United States of America versus Drew
 4   Alexander Young.
 5              Counsel, please state your appearance.
 6              MR. BROWNE:  Good afternoon, Your Honor.  Christopher
 7   Browne on behalf of the United States.  With me at counsel table
 8   is United States Coast Guard Investigative Special Agent Riley
 9   Matsco.
10              THE COURT:  Good afternoon, gentlemen.
11              MR. ABRAMS:  Good afternoon, Judge.  Stewart Abrams,
12   Assistant Federal Defender on behalf of Drew Young, who is
13   present.
14              THE COURT:  Good afternoon, Mr. Abrams.
15              We're here on the sentencing on Mr. Drew Alexander
16   Young; is that correct?  Can I get an appearance from probation?
17              THE PROBATION OFFICER:  Good afternoon, Your Honor.
18   Cherie Audette on behalf of probation.
19              THE COURT:  Ms. Audette.
20              All right.  We're here -- I've reviewed the stipulated
21   factual proffer and written plea agreement, the presentence
22   investigation.
23              Note the defendant requests that he be designated to
24   the FCI in Devens Massachusetts, which I have no problem doing
25   and I will make that recommendation.  If I don't mention it
```

```
 1    again, it will be in my written order.
 2             Note that there has been an adjustment for acceptance
 3    of responsibility, that no objections were reported by the
 4    government.  The defendant has objected, and I've reviewed his
 5    objections to the PSI and sentencing memorandum with attached
 6    letters.  Reviewed the government's response to the defendant's
 7    objections to -- it's one objection, isn't that correct,
 8    Mr. Abrams?
 9             MR. ABRAMS:  Yes, sir.  As well as a request for
10    consideration of a variance.
11             THE COURT:  All right.  And I'm ready to proceed at
12    this time.
13             I will overrule your objection on the basis of the
14    Eighth Circuit case.  I believe that there is case law
15    supporting the position of the government and the probation
16    office, and I will overrule your objection.
17             Is there anything else that we need to discuss before
18    we get into your recommendation for sentence?
19             MR. ABRAMS:  Do you want to hear anything else
20    factually on that point, Judge?
21             THE COURT:  No, I think -- unless you feel like you
22    need to supplement your motion.  Oh wait, there's an
23    interpreter.  I need to swear the interpret.  He's just hanging
24    out. Okay.  He can't avoid it.  This is better entertainment
25    than going down town and walking on Duval Street.
```

>          Okay.  Go ahead.  If you have something you want to
> supplement, feel free.
>          MR. ABRAMS:  Judge, the only thing I would add to the
> argument that we made, and in referencing the cases that are
> cited by the government, as well as the cases which we relied
> on, particularly the Eleventh Circuit cases, the distinction
> between the cases cited by the government and our situation are,
> in each of the cases cited by the government, even though there
> may have been acts which took place where a person did things to
> themselves, the person who did things to themselves was acting
> at the direction of the person who was charged with the offense.
> So that person was being asked to do certain things, such as the
> Starr case.
>          THE COURT:  I don't think that the guidelines really
> deal with that issue.  They don't say -- it says whether they
> depicted.  It doesn't say whether they depicted and it was
> caused by the individual that's on trial.
>          And in this case, from the conversation referenced in
> Paragraph 16 and 17 of the presentence investigation, it would
> appear that it was directed by the plaintiff in this case.  I
> mean, the defendant in this case.
>          MR. ABRAMS:  Well Judge, Your Honor has a partial
> transcript of the conversation which took place between
> Mr. Young and the minor.
>          THE COURT:  Minor victim, yes.

1      MR. ABRAMS:  And in that, he asked her if -- about
2 something else.  And she said I am doing something right now.
3 But the something --
4      THE COURT:  This is a great conversation.
5      MR. ABRAMS:  Yes.  I'm trying to be -- Your Honor
6 understands.
7      THE COURT:  Yeah.
8      MR. ABRAMS:  The pleading is before Your Honor and the
9 exact words from the dialogue are there.
10      But it seems clear from that transcript that that
11 person is acting on her own volition and is not doing what she's
12 doing at the direction of Mr. Young.  And we believe that that
13 distinguishes her -- that action from other cases cited by the
14 government, and we particularly note when it comes to the
15 definition of sadistic, as cited in United States versus Bender,
16 the Eleventh Circuit case, it depicts the subjection of a young
17 child to a sexual act that would have to be painful.
18      And if she was being directed to do something, and that
19 something had the potential of being painful, perhaps that meets
20 the Bender definition.  However, in this case where she is
21 reacting to a verbal stimulus about doing -- about would you be
22 interested in something else, and she on, her own volition,
23 engages in certain conduct, we believe that that distinguishes
24 this situation.
25      And Judge, we don't challenge the other enhancements.

```
 1    There were two other enhancements to the base offense level in
 2    paragraphs 32 and 33 of the presentence report.  We don't
 3    challenge those.  With respect to 34, though, we do.  We just
 4    don't think it fits the definition.
 5            THE COURT:  Mr. Browne?  Do you want to comment?
 6            MR. BROWNE:  Yes, Your Honor.  And in an abundance of
 7    caution, I would like to at least introduce into evidence the
 8    totality of the transcript that's quoted in the government's
 9    response --
10            THE COURT:  That's a good idea.
11            MR. BROWNE:  -- to the objection.  And I apologize for
12    this, Judge.
13            THE COURT:  I don't have to read it though, do I?
14            MR. BROWNE:  I don't think so.  In an abundance of
15    caution, make it part of the record.  I do feel that the court
16    should, at least, have the opportunity to review the image in
17    question.
18            THE COURT:  Well, I think I've read enough of it.  I've
19    read sufficient for me to determine that regardless of -- I
20    don't think that the guidelines require that the conduct be done
21    at the direction of the defendant but in fact, if the offense
22    involved material that portrays sadistic or masochistic conduct
23    or other depictions of violence, and then they held that the
24    minor child's self-penetration with the foreign object is
25    sufficient to support the enhancement, I don't think it says
```

1   anything about whether he directed it or didn't direct it.  I
2   think that it's sufficient if the particular images were
3   depicted.
4           MR. BROWNE:  I think that's absolutely correct, Your
5   Honor.  However, for the same reason, again, the image itself
6   must depict that violence or sadism or masochism.  I think for
7   that reason alone, the court should at least make it part of the
8   record and review the image itself and make a determination.
9           THE COURT:  All right.  Let me see it.  Where am I
10  going to see this?
11          MR. BROWNE:  I'm going to pass it up now, Judge.  I've
12  marked the transcript for the record as Government's Exhibit 1.
13          THE COURT:  And I misspoke earlier.  It's not on pages
14  16 and 17, it's on paragraphs 16 and 17 of the presentence
15  investigation.
16          MR. BROWNE:  And I've marked the image itself as
17  Government's Exhibit 2, Your Honor, and I'll walk those up with
18  the court's permission.
19          THE COURT:  Yeah.  Give them to my courtroom deputy.
20          All right.  I've reviewed Government's Exhibits, what
21  is it, 1 and 2?  And we'll make it part of the record.  Wanda,
22  here you are.  One is the transcript and two is the photograph.
23          All right.  I'm comfortable with my ruling.
24          What else do we have before -- would you like to speak
25  to the sentence, Mr. Abrams?  Or do you want to let the

```
 1    government go first?
 2              MR. ABRAMS:  That's fine.
 3              THE COURT:  Mr. Browne?
 4              MR. BROWNE:  Yes, Your Honor.  Again, I don't want to
 5    belabor anything here, Judge.  But in view of the court's
 6    ruling, I just want to establish the applicable guidelines
 7    range.
 8              THE COURT:  38, advisory guideline provisions 235 to
 9    293, ineligible for probation, five years to life supervised
10    release following release.  Fine of 25 to 250,000.  Restitution
11    is to be determined at a subsequent time.  Special assessment of
12    $100.
13              Is that your understanding of the guidelines based on
14    my ruling?
15              MR. BROWNE:  Yes, Judge.
16              THE COURT:  Mr. Abrams, do you agree that based on my
17    rulings?
18              MR. ABRAMS:  Yes, Your Honor.
19              THE COURT:  Okay.  Go ahead, sir.
20              MR. BROWNE:  Your Honor, briefly, the government is
21    recommending a sentence of 240 months imprisonment in this case.
22    We feel that in view of the seriousness of the offense, the
23    impact on the victims of this case, and the frequency with which
24    this defendant engaged in this type of conduct, very often with
25    underage girls, the government feels that a sentence of 20 years
```

is appropriate and is sufficient, but no greater than necessary, to promote the sentencing purposes established in Section 3553(a) of Title 18.

That is a recommendation on the lower side of the guidelines range, and the United States at least wants to acknowledge that this defendant did serve his country, he was an active duty member of the Coast Guard when he was engaging in these offenses.

And other than that, Judge, I just don't see there are any mitigating circumstances in this case, and I don't think there are any to justify the substantial variance that I believe Mr. Abrams will be asking the court for.

THE COURT:  All right.  Mr. Abrams.

MR. ABRAMS:  Judge, it amazes me the more years I spend in this business, the more -- I don't know, maybe I'm becoming more of the bleeding heart liberal than I used to be, but how jaded have we become by these numbers.  Production of child pornography is the case that I used to do when you had an adult individual who was telling a minor what to do or causing someone particularly to do something to another individual, to make a movie, to then sell that movie or distribute that movie in order to financially benefit from that movie.

The individual before Your Honor -- and Judge, his mother and his stepfather are present, his mother would like to address you as part of this.  But the individual before you,

1    Judge, is 24 years old.  He has had no prior contact with the
2    criminal justice system.  He served his country, he was a very
3    good student in school.  His family members, and I believe six
4    or seven of them have provided letters to you to talk about his
5    background, his interaction --
6          THE COURT:  Including his mother which, as you know, I
7    don't take letters and hear testimony.  I got one or the other.
8    But I've got a letter from her and I've read it.
9          So go ahead.  Keep speaking.
10         MR. ABRAMS:  Yes, sir.  Well Judge, I would just say
11   then on behalf of Mrs. Hooper, that is a very heartfelt letter.
12   And the only difference really between her addressing you
13   personally is you hearing it personally from her and the
14   genuineness and the emotion that comes with it.  Because this is
15   --
16         THE COURT:  I believe that.  I didn't think otherwise.
17   I thought it was very personal.
18         MR. ABRAMS:  Yes, sir.  Just so Your Honor knows,
19   Mrs. Hooper and her husband came down here from Massachusetts in
20   support of their son.
21         THE COURT:  Right.  I got that from all of the letters,
22   really.
23         MR. ABRAMS:  Yes, sir.  And Judge, the letters describe
24   Mr. Young, the person.  Mr. Young the person as the individual
25   who is being sentenced.  He came from a good family, good family

values, a lot of interaction with family members and friends and perhaps, even though he had a very laudable purpose in leaving home and joining the Coast Guard, he was then on his own. And unfortunately, perhaps without the structure and the family influences there and him being somewhat of a loner, he went the wrong way.

He recognizes there is an issue, and that is why we have recommended the Federal Medical Center in Devens Massachusetts. That, in addition to the fact that that's where he's from, that's where his family lives. So in addition to the counseling and the treatment, he will also have the support of the same family members who kept this young man on the straight and narrow through the first 19 years of his life.

And now he's straight. And there is a problem. And the only reason, with all due respect to the government, that I am asking for quote, unquote, only 180 months, is because that's as low as Your Honor can go, unfortunately, with respect to the production charge. And the production here consists of a conversation between Mr. Young and someone who was underage who, as a result of that conversation, did something to herself; hence production. And respectfully, I don't believe that that is -- although it meets the definition, it definitely meets the legal definition, like certain many other things that -- Your Honor, that we deal with on a very frequent basis, sometimes the application of the law doesn't necessarily meet the strict

1  letter of the intent.
2           And here -- and again, unfortunately, the best I can
3  ask for is 180 months.  Part of the 18 USC 3553(a) factors
4  includes the need for treatment.  It also includes the nature
5  and characteristics of the defendant.  And Your Honor has seven
6  letters which attest to the nature and characteristics of this
7  defendant.  And we have asked for the facility which is going to
8  give him that treatment.  He is going to take advantage, as he
9  will tell you in his statement to Your Honor, of opportunities
10 which he hopes are available to him while he's incarcerated to
11 further his education, perhaps to learn other a trade while he
12 is in because he's not going back to the Coast Guard when he
13 gets out.  Obviously they're not going to take him back.
14          But Judge, for this 24 year old young man, who tried to
15 serve his country, who did serve his country for five years, who
16 made a really, really horrific mistake in getting involved in
17 this, if you can even call it a mistake, who committed an act,
18 who is going to pay for that act, we would respectfully suggest
19 that a sentence of 180 months, of which he will serve more than
20 12, is more than adequate punishment and deterrence and
21 everything else to meet the sentencing requirements of 3553 (a).
22          We would ask Your Honor to impose a variance and impose
23 a sentence of 180 months.
24          THE COURT:  All right, sir.  I'll be happy to hear from
25 the defendant.  You can stay seated.  It's easier to speak into

```
 1        the microphone.
 2                THE COURT:  Thank you, Your Honor.  I just want to say,
 3        good afternoon.  First off, I apologize to all the victims'
 4        families, as well as my own.  I understand what I did is
 5        completely wrong.  I accept full responsibility of my actions.
 6        I will take the time that I am incarcerated to further my
 7        education, understand myself better as a person, and try and
 8        stay on the correct path in life.
 9                That's all I have for right now, Your Honor.
10                THE COURT:  All right.  Anything further from either
11        side?
12                MR. ABRAMS:  No, sir.
13                MR. BROWNE:  No, Your Honor.
14                THE COURT:  All right. I've considered the statements
15        of all the parties and your request, Mr. Abrams.  I don't
16        believe that a sentence below the guidelines is appropriate in
17        this case.  The actions of the defendant were not solely limited
18        to chatting with these young underage girls, he had instances
19        where only the strength of the victims were -- resisted him,
20        where he asked for -- he had two instances of sexual harassment
21        within the military where the fact that the people that he
22        approached were strong enough to say get out of my life or get
23        out of my face, stopped him from getting them involved.
24                I've considered the statements of all the parties, the
25        presentence report which contains the advisory guidelines and
```

```
 1      the statutory factors as set forth in 18 USC Section 3553(a).
 2              It is the finding of the court that the defendant is
 3      not able to pay a fine along with restitution.
 4              It is the judgment of the court that the defendant,
 5      Drew Alexander Young, is committed to the Bureau of Prisons to
 6      be imprisoned for a term of 235 months as to Count 1.
 7              It is further ordered that pursuant to 18 USC Section
 8      3664(d)(5), the victims' losses are not yet ascertainable,
 9      therefore the court will set a date of July 11, 2016 at 2 p.m.
10      here in this courtroom in Key West, for the final determination
11      of the victims' losses.
12              Upon release from imprisonment, the defendant shall be
13      placed on supervised release for a term of 10 years as to Count
14      1.  Within 72 hours of release from the custody of the Bureau of
15      Prisons, the defendant shall report in person to the probation
16      office in the district to which the defendant is released.
17      While on supervised release, the defendant shall not commit any
18      crimes, shall be prohibited from possessing a firearm or other
19      dangerous devices, shall not possess a controlled substance,
20      shall cooperate in the collection of DNA and shall comply with
21      the standard conditions of supervised release including the
22      following special conditions:  Computer possession restriction,
23      no contact with minors, no contact with minors in employment, no
24      involvement in youth organizations, sex offender treatment,
25      restricted from possession of sexual materials, Adam Walsh
```

```
 1        search condition and sex offender registration as noted in Part
 2        G of the presentence report.
 3                I will recommend that he be incarcerated at the
 4        facility which you requested in Massachusetts.
 5                It is further ordered that the defendant shall pay
 6        immediately to the United States a special assessment of $100.
 7                The total sentence 235 months imprisonment, 10 years
 8        supervised release, $100 special assessment.
 9                Now that sentence has been imposed, does the defendant
10        or his counsel object to the court's finding of fact or the
11        manner in which sentence was pronounced?
12                MR. ABRAMS:  Your Honor, we would respectfully object
13        to your finding with respect to our objection in PSI Paragraph
14        34 regarding the sadistic and masochistic conduct adjustment.
15                THE COURT:  All right.  Have you the right to appeal
16        the sentence imposed.  Any notice of appeal must be filed within
17        14 days after the entry of the judgment.  If you're unable to
18        pay the cost of an appeal, you may apply for leave to appeal in
19        forma pauperis.
20                Good luck to you, Mr. Young.
21                MR. ABRAMS:  Your Honor, may I make one more request?
22                One of the very few ways that Mr. Young has to
23        communicate with family, other than personal visits, is via the
24        e-mails on the computer system in BOP.  Sometimes, and there are
25        exceptions to this, the Bureau of Prisons will not allow an
```

```
 1        inmate to use the computer because of this computer restrictions
 2        part of your order.
 3             I'd ask that, perhaps, an exception to the computer
 4        restriction be that he is permitted to use a computer for
 5        purposes of e-mail conversation with counsel or family.
 6             THE COURT:  How in the world do I tell the Bureau of
 7        Prisons to do that?
 8             MR. ABRAMS:  As part of your sentencing order.  That
 9        the court doesn't object to him having e-mail access.
10             THE COURT:  All right.  I'll put in the order that I do
11        not object to -- if the Bureau of Prisons can come up with a way
12        of doing it, to permitting him to utilize the computer to e-mail
13        his family.
14             MR. ABRAMS:  That's fine.  And counsel.
15             THE COURT:  Yeah.  And -- you know, and counsel.
16             MR. ABRAMS:  Yes, sir.  Thank you.
17             THE COURT:  All right.  You got that, Wanda?
18             COURTROOM DEPUTY:  Yes, Judge.
19             MR. ABRAMS:  Thank you, Your Honor.
20             THE COURT:  All right.
21             MR. BROWNE:  Your Honor, two more matters from the
22        government.  I apologize.  First, and pursuant to the terms of
23        the plea agreement, we would ask that the agreed-upon forfeiture
24        be made part of the sentence.  That is forfeiture of a Samsung
25        Galaxy S5 cellular, a Lenovo G570 computer and Apple iPod model
```

```
 1      A1367.
 2              THE COURT:  All right.  I didn't do that in a
 3      preliminary order?  I don't think I did.  If you'll file a
 4      motion, I will enter an order forfeiting those.  Any objection,
 5      Mr. Abrams?
 6              MR. ABRAMS:  No, sir.
 7              MR. BROWNE:  And finally, Your Honor, the government
 8      would move to dismiss Counts 2 and 3 of the indictment as to
 9      this defendant.
10              THE COURT:  Upon motion of the government, Counts 2 and
11      3 of the indictment shall be dismissed as to Mr. Young.  All
12      right?
13              We'll be in recess on this matter.
14              MR. ABRAMS:  Thank you, Judge.
15              THE COURT:  Thank you, sir.
16                 (PROCEEDINGS CONCLUDED)
                            * * * * *
17
                        C E R T I F I C A T E
18      I certify that the foregoing is a correct transcript from the
        record of proceedings in the above-entitled matter.
19
        5-27-2016               /s/ Dawn M. Savino
20      Date                    DAWN M. SAVINO, RPR
21
22
23
24
25
```